✪AO91 (Rev. 12/03)  Criminal Complaint

# UNITED STATES DISTRICT COURT

_____ SOUTHERN _____ DISTRICT OF _____ GEORGIA _____

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2007 JAN 18 PM 12: 04
CLERK _____
SO. DIST. OF GA.

UNITED STATES OF AMERICA
V.
EVA PARTIDA,
ISIDRO PULIDO TEJEDO,
JOSE MARTIN OROZCO-CUELLAR, and
MARTIN VILLEGAS-TELLO

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

Case Number: 07-05M

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about __JANUARY 9, 2007__ in __CHATHAM__ County, in
(Date)
the __SOUTHERN__ District of __GEORGIA__ defendant(s) did,

(Track Statutory Language of Offense)
CONSPIRE TO POSSESS, WITH INTENT TO DISTRIBUTE, MORE THAN 100 KILOGRAMS OF MARIJUANA, A SCHEDULE I CONTROLLED SUBSTANCE,

in violation of Title __21__ United States Code, Section(s) __846__.

I further state that I am a(n) __Special Agent of ICE__ and that this complaint is based on the
    Official Title
following facts:

[SEE ATTACHED AFFIDAVIT]

Continued on the attached sheet and made a part of this complaint: ☒ Yes   ☐ No

_____
Signature of Complainant

GREGORY RICKS
Printed Name of Complainant

Sworn to before me and signed in my presence,

__1/18/07__ at __Savannah, Georgia__
Date                                                    City                           State

HON G. R. SMITH         US MAGISTRATE JUDGE         _____
Name of Judge           Title of Judge              Signature of Judge

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

UNITED STATES DISTRICT COURT

2007 JAN 18 PM 12: 03

SOUTHERN DISTRICT OF GEORGIA

CLERK
SO. DIST. GA.

| | |
|---|---|
| In the Matter of the Arrest of ) | |
| ) | |
| EVA PARTIDA ) | 07-05m |
| ISIDRO PULIDO-TEJEDO ) | Complaint |
| JOSE MARTIN OROZCO- ) | |
| CUELLAR ) | |
| MARTIN VILLEGAS-TELLO ) | |

Case No. 07-05m

1.

I, Gregory Ricks, being duly sworn, depose and state that:

I am a Senior Special Agent of the Department of Homeland Security, Immigration and Customs Enforcement (DHS/ICE), presently assigned to the Office of the Resident Agent in Charge, Savannah, Georgia, previously the United States Customs Service. I have been so employed since July 1984. I am an investigative or law enforcement officer of the United States within the meaning of Title 18 U.S.C. § 2510(7) and I am empowered by law to conduct investigations of and make arrests for offenses enumerated in Title 18, United States Code, Section 545 and Title 21 United States Code, Sections 846 and 952.

During my tenure with the U. S. Customs Service and ICE, I have participated in investigations involving the investigation and apprehension of persons who are unlawfully importing and distributing illegal narcotics into the United States. I have personally participated in the investigation of the offenses referred to in the present investigation, and because of my personal participation in this investigation and reports made to me, both in written and verbal form, by members of the participating law enforcement agencies, I am familiar with the facts and circumstances of this investigation.

2.

This Affidavit is made in support of a criminal complaint in support of warrants for the arrest of EVA PARTIDA, ISIDRO PULIDO-TEJEDO, JOSE MARTIN OROZCO-CUELLAR, and MARTIN VILLEGAS-TELLO for a violation of Title 21, United States Code, section 846, conspiracy to possess with the intent to distribute marijuana.

3.

I submit there is probable cause to believe the following violations have occurred:

- Title 21, United States Code, Section 952(a), which make it a crime to import into the customs territory of the United States from any place outside thereof or to import into the United States from any place outside thereof, any controlled substance included in Schedules I through V.
- Title 21, United States Code, Sections 841(a)(1) & 846, which make it a crime to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.
- Title 18, United States Code, Section 545, which make it a crime to fraudulently or knowingly import or bring into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.

4.

I am familiar with the information contained in this Affidavit based upon the investigation I have conducted in conjunction with other Special Agents and based on my knowledge and conversations with other law enforcement officers who have engaged in numerous investigations involving the importation, possession, and distribution of controlled substances.

5.

Because this Affidavit is being submitted for the limited purpose of securing an arrest ~~search~~ warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that violations of Title 21, United States Code, Sections 952(a), 841(a)(1) & 846, and Title 18, United States Code, Section 545, have been committed.

### Overview of the Underlying Investigation

6.

On January 9, 2007, the Merchant Vessel (MV) Diego arrived at the Port of Savannah, Georgia, from the Port of Altamira, Mexico, and unladed a 20-foot container, which was marked with number MEDU1039890. Container MEDU1039890 was manifested as containing 135 boxes of washing powder. Prior to being released, Customs and Border Protection (CBP) Officers targeted the container for inspection.

7.

On January 11, 2007, CBP Officers opened the container and observed stacked brown boxes measuring approximately 12"x14"x16". CBP Officers obtained approximately 15 boxes for inspection. Upon opening the boxes, sealed bags were observed, three per box, with Spanish writing on the outside of each bag advertising Viva washing powders. The bags were approximately 12 inches in length and advertised the contents as one kilogram. Upon physically removing a bag, officers felt a rigid, brick-like object that was contained within the bag. Upon opening a bag, officers identified what appeared to be washing powders and a brick-like object that was heavily wrapped in black tape. The object was then opened, which revealed a green leafy substance that field-tested positive for marijuana utilizing a Duquenois-Levine Reagent 908 and KN Reagent 909 field test kit. Of the 15 boxes removed, seven were found to contain approximately three of the above-described bags. Each bag was found to contain one package of marijuana. Each package of marijuana was similarly wrapped in black tape and weighed approximately one kilogram. The container and boxes were repackaged and sealed for an impending controlled delivery. The container has been locked and in the custody of RAC/Savannah agents at the Port of Savannah since its inspection. A device has been placed on the container since its delivery to Customs and will remain on the container until its contents are unloaded at 3760 Browns Mill Road, Atlanta, Georgia.

8.

Research was then conducted on the shipment. The consignee was manifested as DETERGENTES LATINOS, with an address of 2493 Legion Way, East Point, Georgia. The subject filer of the shipment was listed as Jose Maria SOLIS-OROZCO, with an importer identification number of 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. The importer identification number is also listed as the social security number of the SOLIS-OROZCO.

9.

A query of Lexis Nexus revealed that Jose Maria SOLIS-OROZCO currently resides in California, not Georgia. Additionally, the address of 2493 Legion Way, East Point, Georgia, does not exist. A query of Lexis Nexus and Georgia Secretary of State also failed to list a business by the name of DETERGENTES LATINOS.

10.

On January 13, 2007, ICE Special Agents developed information that a particular Savannah transport company had been contracted to deliver the container to Atlanta, Georgia, specifically to DETERGENTES LATINO, 3760 Browns Mill Road, Atlanta, Georgia. Records revealed that this shipping address was different than the address manifested on the importation records. Additionally, a telephone number, 404-557-3575, was provided so as to notify the receiver upon delivery to Atlanta. In addition to the phone number, specific instructions were given to the transport company. The truck driver was instructed not to leave the container at the facility, but rather to stay with the

3

truck and personnel at the destination would unload the container. Upon completion of the unloading, the driver was to transport the container back to the transport company's facility.

11.

Research was then conducted on the address of 3760 Browns Mill Road, Atlanta, Georgia. The address is legitimate and has been identified as a warehouse facility. However, the name of the facility is not DETERGENTES LATINO. Rather it is listed as SHOWROOM SERVICES INCORPORATED.

12.

On January 15, 2007, contact was initiated with the phone number provided to the transport company, 404-557-3575. The initial phone call was unsuccessful; however, a subject provided a prompt on the voicemail stating the name, ALBERTO SUAREZ. A second phone call was successful wherein the subject answered saying, "Hello, this is ALBERTO." ALBERTO SUAREZ was provided information that his container was scheduled to arrive on January 16, 2007, at 1200 hours. ALBERTO SUAREZ acknowledged his concurrence with the delivery time and provided an additional contact person and phone number to be used upon the arrival of the container. The name provided was "MIKE" with the listed phone number of 404-762-7700.

13.

On January 15, 2007, a telephone call was initiated to 404-762-7700. The person answered saying, "Showroom Services." A request was made to speak with "MIKE" and the subject stated that "MIKE" was not in, but the subject asked if he could assist. The subject, who identified himself as "BYRON", was provided information stating that the container that was scheduled to be delivered will arrive on January 16, 2007. "BYRON" then provided specific directions for the delivery of the container, which matches the address (3760 Browns Mill Road, Atlanta, GA 30354) provided on the transport documents. "BYRON" further stated that the driver is to deliver the container by way of a specific drive, which is located to the right of the facility. (Note: There are two drives, one on each side of the building, with loading docks associated with each drive.) "BYRON" concluded the conversation by asking, "Is that regarding the 20 foot container?" When an affirmative response was given, "BYRON" stated, "Yeah, I'm pretty sure I know what it is."

14.

On January 16, 2007, Special Agents of United States Immigration and Customs Enforcement assigned to the Resident Agent in Charge, Savannah, Georgia, with the assistance of ICE/Atlanta and Special Agents of the United States Coast Guard, planned to conduct a controlled delivery of container number MEDU1039890 to 3760 Browns

4

Mill Road, Atlanta, Georgia. Prior to delivery of the container, Special Agents installed an LB1 electronic device inside three boxes that contain marijuana.

15.

On January 16, 2007, the controlled delivery was successfully completed to Showroom Services Incorporated, 3760 Browns Mill Road, Southeast, Atlanta, Georgia, later identified as a warehouse facility. Upon arrival to the facility, Special Agent Gregory Ricks, ICE/Savannah, entered the facility, where he was advised at which loading dock to park the truck to effect the unloading of the boxes. Once the container was backed into a loading dock, personnel with the business unloaded the container by hand and placed the boxes onto pallets. While the boxes were being unloaded, a female, later identified as Eva PARTIDA-GARCIA, began to count the boxes.

16.

Upon completion of the unloading, ICE Agents began to conduct surveillance of the facility. After approximately two hours, ICE Agents entered the business and spoke to management. Management advised that the shipment of container number MEDU1039890 was contracted to arrive and be housed in their warehouse by a person by the name of Eduardo DIEZ. Management advised that on or about January 9, 2007, DIEZ and PARTIDA-GARCIA arrived at his facility and contracted with them to receive and house container MEDU1039890. Furthermore, management advised that DIEZ did not want to pay for the services by means of a check or wire transfer, rather by cash. DIEZ then paid management $400 cash to unload and store the container upon arrival to the warehouse.

17.

Management advised that once the contract was made, an unidentified male named Pablo, last name unknown (LNU), contacted their business. Pablo stated that he was employed with Atlanta Customs Brokers and provided management with documents pertaining to the arrival of container MEDU1039890 from Mexico. The documents included the name of the company under which the container was imported into the United States, DETERGENTES LATINO. Management further advised that all further contact regarding the container would be made through him.

18.

During the conversation with management, ICE Special Agent Jeremi Blankley observed PARTIDA-GARCIA standing in the middle of the palletized boxes. Special Agent Blankley identified himself as a Special Agent with ICE, and requested to speak to her. PARTIDA-GARCIA consented and advised that she worked for a person by the name of Eduardo DIEZ, and was counting the number of kilograms attached to each box. PARTIDA-GARCIA stated that she was told by DIEZ to arrive on today's date (January 16, 2007) and conduct the count.

19.

PARTIDA-GARCIA admitted that she was employed by DIEZ, starting on January 2, 2007. She advised that DIEZ pays her $50.00 a day to arrive at an office that only houses a phone, a fax machine, and a desk. The location of the office is 2943 Legion Way, East Point, Georgia, a similar type address as that listed as the consignee of the shipment. PARTIDA-GARCIA stated that she was responsible for contracting with the Mexican business to have the container shipped to the United States, which she successfully accomplished. PARTIDA-GARCIA further advised that she spoke with Pablo and Hector at Atlanta Customs Brokers to facilitate the entry into the United States of container MEDU1039890. PARTIDA-GARCIA further stated that she was provided $900.00 cash by DIEZ to pay Pablo, after normal business hours, for the facilitation. (Customs Brokers are normally paid electronically, by check, or by wire transfer.)

20.

Agent Blankley then inquired as to what she believed to be in contained inside the boxes, and initially she advised soap. However, later she admitted that she believed the boxes to contain "drugs." Furthermore, PARTIDA-GARCIA stated that the main person we wanted that was responsible for the shipment was a person by the name of Jose Maria SOLIS-OROZCO, who resides in California.

21.

On January 17, 2007, a DIEZ contacted personnel at Showroom Services Incorporated and advised that a truck would be arriving midday to obtain the boxes. Subsequently, a 24 foot Uhaul truck arrived at the warehouse, driven by an unidentified Hispanic male subject. The subject advised that he was there to obtain the boxes of soap.

22.

As such, the boxes were loaded into the Uhaul wherein the subject transported the boxes to a K-Mart located on Cleveland Avenue, Atlanta, Georgia. The subject exited the vehicle and entered the retail establishment. Moments later, a Hispanic male subject, later identified as Martin VILLEGAS-TELLO, entered the Uhaul and drove it out of the parking lot. Close behind the vehicle was observed a Green Ford Aerostar driven by a Hispanic male subject, later identified as Isidro PULIDO-TEJEDO. PULIDO-TEJEDO followed the Uhaul as it traveled north on Interstate 85. Once outside the city of Atlanta, the Uhaul stopped at a Pilot Gas Station. The driver of the Uhaul, VILLEGAS-TELLO, exited the vehicle and walked over to a dark gray Honda Accord, being fueled by another Hispanic male subject, later identified as Jose Martin OROSCO-CUELLAR. VILLEGAS-TELLO and OROSCO-CUELLAR spoke briefly, and re-entered their respective vehicles.

23.

Upon exiting the Pilot gas station, OROSCO-CUELLAR, driving the gray Honda Accord led the Uhaul out of the parking lot. Directly behind the Uhaul, was the green Ford Aerostar van. The vehicles drove in tandem north on Interstate 85 where a traffic stop was initiated on all three vehicles.

24.

Upon speaking with the driver of Uhaul, VILLEGAS-TELLO, he advised that he did not wish to speak regarding the vehicle or its contents.

25.

Agent Blankley then approached the driver of the Honda Accord, OROSCO-CUELLAR, and requested to speak to him. OROSCO-CUELLAR immediately stated, "The green's not mine, the green's not mine." Agent Blankley asked, "What green, the marijuana?" OROSCO-CUELLAR stated, "Yes!" OROSCO-CUELLAR immediately followed by saying that the young guy, PULIDO-TEJEDO, told him what was in the Uhaul.

26.

Agent Blankley then attempted to speak to PULIDO-TEJEDO, wherein he requested to speak to an attorney.

27.

The Uhaul truck was transported to Atlanta, wherein all the boxes were inspected and searched. Secreted inside the boxes were located bags of soap which contained bricks of marijuana. Upon completion of the search, a total of approximately 1,117 pounds of marijuana were found.

## CONCLUSION

28.

Based upon the above information, there is probable cause to believe that EVA PARTIDA, ISIDRO PULIDO-TEJEDO, JOSE MARTIN OROZCO-CUELLAR, and MARTIN VILLEGAS-TELLO, violated federal narcotics laws under Title 21, United States Code, Sections 841(a)(1) & 846, conspiracy to possess marijuana with the intent to distribute. I believe probable cause exists that violations of Title 21 U.S.C. 841(a)(1) and 846 have occurred.

_____
Gregory Ricks, ICE

Sworn to before me, and subscribed in my presence

This __18th__ day of January 2007 at __11:25__ a.m.     at __Savannah, GA__
                                                                         City and State

_____
United States Magistrate Judge G. R. Smith